UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARIA GLADYS GUTIERREZ DE CUARTAS, ) ) ) | |
| Plaintiff, ) ) vs. ) | 1:10-cv-00390-LJM-TAB |
| ) AMERICAN AIRLINES, INC., ) ) Defendant. ) | |

### ORDER

Pending before the Court are two motions for summary judgment: plaintiff's, Maria Gladys Gutierrez de Cuartas ("Plaintiff"), Motion for Partial Summary Judgment as to Strict Liability under the Montreal Convention [Dkt. No. 50]; and defendant's, American Airlines, Inc. ("Defendant"), Motion for Summary Judgment [Dkt. No. 53]. Plaintiff brings this claim for personal injury occurring at Jose Maria Cordova Airport ("MDE") in Medellin, Colombia, under the Convention of Unification of Certain Rules for International Carrier by Air ("Montreal Convention"), a multinational treaty to which both the United States and Colombia are signatories. The Court has considered the parties' submissions[1] and, for the reasons set forth below, **DENIES** both Motions [Dkt. Nos. 50, 53].

---

[1] Plaintiff's Unopposed Motion to Supplement her Designation of Evidence in Support of Motion for Partial Summary Judgment as to Strict Liability under the Montreal Convention [Dkt. No. 56] is **GRANTED**, and that supplemental evidence will be considered in evaluating the current Motions.

## I.  BACKGROUND[2]

This case arises from personal injury suffered by Plaintiff during an airline trip from Indianapolis, Indiana to Medellin, Colombia.  On December 18, 2009, Plaintiff, accompanied by her daughter and son-in-law, boarded American Airlines Flight 919 in Miami, Florida, bound for MDE.  Dkt. No. 54 at 2.  Plaintiff had flown approximately five times prior to this date, including about four flights from Indiana to Colombia.  Dkt. No. 52-1 at 2–3.  Just prior to landing, there was a "big storm" in Medellin.  *Id.* at 2.  Plaintiff saw the rain from the aircraft, and the pilot announced the storm's presence.  *Id.*

Because the MDE terminal was under construction, portable stairs, rather than a jetway, were used for disembarking flights.  *Id.* at 3.  The stairs were owned, maintained, and provided by Desacol S.A., an independent contractor.  Dkt. No. 55-3 at 3.  Plaintiff expected that a jetway would be used for disembarking and was not aware that stairs would be used until she was exiting the aircraft.  Dkt. No. 52-1 at 3.  Defendant's policy requires the pilot and flight crew to announce when stairs, as opposed to a jetway, will be used for disembarkation.  Dkt. Nos. 52-11–52-14.  Neither Plaintiff nor her daughter or son-in-law remember hearing any announcement that stairs would be used.  Dkt. Nos. 52-1 at 4; 52-3 at 1; 52-4 at 1.

Plaintiff first saw the stairs approximately four feet past the last flight attendant inside the cabin.  Dkt. No. 52-1 at 3.  The stairs were metal, wet from the rain, and lacked black traction strips, although they did have some pattern of raised metal on the steps.  *Id.* at 5.  Plaintiff was carrying her carry-on bag, which weighed approximately fifteen pounds, and

---

[2] As Defendant has declared certain facts undisputed for the purposes of the Cross-Motions only, *see* dkt. no. 54 at 3 n.1, the following factual background is for purposes of this Order only.

2

wearing rubber-soled shoes.  *Id.* at 3–4.  Although she later stated in her deposition that she felt she needed assistance on the stairs, Plaintiff did not request help in descending the stairs from her daughter, son-in-law, or any of Defendant's employees.  *Id.* at 3.

Plaintiff began to descend the stairs, holding her carry-on luggage in one hand with her other hand on the handrail.  *Id.* at 4.  She was "comfortably" and "calmly coming down" the stairs.  *Id.*  Nobody bumped into Plaintiff while she was descending the stairs.  *Id.*  Approximately three steps from the bottom, Plaintiff's right foot slipped forward and she fell.  *Id.*  A number of airport employees, including at least one of Defendant's employees, responded and took Plaintiff to receive medical assistance in a facility at MDE.  *Id.*  Plaintiff was given a pain medication injection and instructed to consult her doctor if pain continued.  Dkt. No. 52-2 at 1.  On December 28, 2009, Plaintiff saw a doctor, who informed Plaintiff that she had a tear in her meniscus and damage to her kneecap.  *Id.* at 2.  Plaintiff now seeks recovery on the basis of that knee injury.

The Court includes additional facts below as necessary.

## II.  LEGAL STANDARD

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267–68 (7th Cir. 1990).  Motions for summary judgment are governed by Federal Rule of Civil Procedure 56(a), which provides in relevant part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials showing that a material fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1). A genuine dispute of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party bears the burden of demonstrating that such a genuine dispute of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996). It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying applicable evidence. *See Bombard v. Ft. Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

In evaluating a motion for summary judgment, the Court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). If the moving

party does not have the ultimate burden of proof on a claim, it is sufficient for the moving party to direct the court to the lack of evidence as to an element of that claim. *See Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 & n.3 (7th Cir. 1994). "If the nonmoving party fails to establish the existence of an element essential to [her] case, one on which [she] would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

### III. DISCUSSION

The parties agree that this dispute is governed by the Montreal Convention, which provides Plaintiff's exclusive remedy against Defendant. *See El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 169 (1999). Specifically, Article 17 of the Montreal Convention ("Article 17") controls and reads in relevant part as follows:

> The carrier is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

Convention for the Unification of Certain Rules for International Carrier by Air art. 17, May 28, 1999, S. Treaty Doc. No. 106-45, 2422 U.N.T.S. 350, 1999 WL 33292734. In construing the Montreal Convention, common law constructions of the Warsaw Convention, the Montreal Convention's predecessor treaty, may be considered. *See, e.g., Watts v. American Airlines, Inc.*, No. 1:07-CV-434, 2007 WL 3019344, at *2 (S.D. Ind. Oct. 10, 2007) (Young, J.).

The issue on summary judgment is a narrow one: whether the circumstances

leading to Plaintiff's injury constitute an "accident" as that term of art[3] is interpreted under Article 17. The Supreme Court has defined "accident" under the Warsaw Convention as an "unexpected or unusual event or happening that is external to the passenger." *Air France v. Saks*, 470 U.S. 392, 405–06 (1985). The cause of the injury, rather than its sheer occurrence, must qualify as an "accident." *Id.* at 399. The definition of "accident" "should be flexibly applied after assessment of all the circumstances surrounding a passenger's injuries." *Id.* at 405. The "accident" need be only "some link in the chain" and need not be the sole cause of Plaintiff's injuries. *Id.* at 406; *see also Olympic Airways v. Husain*, 540 U.S. 644, 653 (2004).

Plaintiff points to two events she contends constitute an "accident" under Article 17. First, Plaintiff contends that the use of stairs rather than a jetway—particularly these stairs, which were steep, wet, and lacked traction strips—constitutes an "accident." Second, Plaintiff contends that the failure of the flight attendants to adhere to Defendant's policy requiring on-board warnings when stairs will be used to disembark constitutes an "accident." Defendant contends that because "the presence of rainwater following a storm" is not "unexpected or unusual," and Plaintiff knew it had been raining, Plaintiff's fall on the wet stairs did not result from an "accident." In addition, Defendant asserts that the purported failure to warn is not material because Plaintiff's injury was proximately caused by the condition of the stairs, rather than the warning or lack thereof. In light of the Supreme Court's guidance advocating a totality of circumstances approach to the definition of "accident," the Court will examine the entire sequence of events to determine whether

---

[3] The Court uses "accident" including quotation marks to denote use as a term of art rather than common usage of the word.

6

an "accident" occurred. *See Saks*, 470 U.S. at 405.

In support of her contention that an "accident" occurred, Plaintiff points to a number of pieces of evidence. The evidence suggests that a jetway, not stairs, was the standard method of disembarkation. *See* dkt. nos. 52-1 at 2; 52-3 at 1; 55-1 at 7. The stairs were steep and lacked traction strips. Dkt. Nos. 52-1 at 5; 52-2 at 2; 52-3 at 1, 4–5; 52-4 at 2; 56-1 ¶¶ 5, 7. A number of passengers do not remember the flight crew providing warnings that stairs, rather than a jetway, would be used for disembarkation and encouraging passengers to watch their step, even though Defendant's policy requires that the flight crew provide such warnings. Dkt. Nos. 52-1 at 4; 52-3 at 1; 52-4 at 1; 54-11 at 3; 56-1 ¶ 8. Additionally, although the Seventh Circuit has not spoken on the issue, courts in other jurisdictions have found injuries suffered by falling down stairs to result from "accidents" under Article 17. *See, e.g., Gezzi v. British Airways PLC*, 991 F.2d 603, 604 (9th Cir. 1993) (wet stairs as "accident"); *McCarthy v. American Airlines, Inc.*, No. 07-61016-CIV, 2008 WL 2704515, at *4–*5 (S.D. Fla. June 27, 2008). Taking all circumstances into consideration, Plaintiff has presented sufficient evidence that a reasonable jury could find that Plaintiff's injuries were caused by an "accident" under Article 17.

However, this does not end the Court's inquiry, as Defendant points to evidence suggesting that the circumstances leading to Plaintiff's injuries were not "unexpected or unusual." Defendant's standard practice is to provide warnings when stairs will be used for disembarkation—dkt. nos. 62-1 ¶¶ 6–8; 62-2 ¶¶ 5–8—and Defendant correctly points out that Plaintiff's evidence that passengers do not remember being given those warnings

7

does not definitively prove that no warnings were given.[4] *See* Fed. R. Evid. 406 (allowing evidence of organization's "routine practice" to prove conformity with practice). Additionally, Plaintiff saw the rain and, therefore, Defendant argues, wet outdoor surfaces should not have been "unexpected." *See* dkt. no. 55-1 at 3. There is no evidence that the stairs were defective in design or maintenance. *See id.* at 5–6 (stairs did not appear "dysfunctional" or "poorly maintained"). Unlike other cases where flight crew failure to act was found to be an "accident"—*see, e.g.*, *Husain*, 540 U.S. 644 (2004); *Fulop v. Malev Hungarian Airlines*, 175 F. Supp. 2d 651 (S.D.N.Y. 2001)—Plaintiff did not request assistance from Defendant's employees. Dkt. No. 55-1 at 4. Lastly, Defendant has brought forth evidence suggesting that the use of stairs for disembarking is common in the airline industry and the only method of disembarkation when jetways are unavailable. Dkt. No. 55-4 ¶¶ 5–6. In short, Defendant has brought forth sufficient evidence such that a reasonable jury could conclude that no "accident" occurred.

In conclusion, having examined the totality of the circumstances, the Court concludes that there is a genuine issue of material fact as to whether the circumstances surrounding Plaintiff's injury were "unexpected and unusual" such that an "accident" occurred under Article 17. Sufficient evidence exists in the record such that a reasonable jury could find in favor of either party and, therefore, the question is not appropriate for this Court's determination at the summary judgment stage. *See Anderson*, 477 U.S. at 249;

---

[4] Defendant also challenges whether the alleged lack of warnings could have proximately caused Plaintiff's injuries when she held the handrail and descended the stairs carefully, just as the warnings would prescribe. *See* dkt. no. 55-1 at 5, 7 (Plaintiff stated that she was "calmly coming down" the stairs "slowly" and holding the handrail). The Court acknowledges the dispute about proximate cause but, given that the "accident" element precludes summary judgment in any event, declines to draw any conclusions about proximate cause at this time.

*see also McCaskey v. Continental Airlines, Inc.*, 159 F. Supp. 2d 562, 574 (S.D. Tex. 2001) (existence of an "accident" question of fact for jury determination).

## IV.  CONCLUSION

For the reasons set forth herein, Plaintiff's Unopposed Motion to Supplement her Designation of Evidence in Support of Motion for Partial Summary Judgment as to Strict Liability under the Montreal Convention [Dkt. No. 56] is **GRANTED**.  The Court **DENIES** Plaintiff's Motion for Partial Summary Judgment as to Strict Liability under the Montreal Convention [Dkt. No. 50].  The Court further **DENIES** Defendant's Motion for Summary Judgment [Dkt. No. 53].

IT IS SO ORDERED this 12th day of March, 2012.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution to:

Matthew D. Bruno
KIGHTLINGER & GRAY
mbruno@k-glaw.com

D. Bruce Kehoe
WILSON KEHOE & WININGHAM
kehoe@wkw.com

Steven Edward Springer
KIGHTLINGER & GRAY
sspringer@k-glaw.com

Christopher G. Stevenson
WILSON KEHOE & WININGHAM
cstevenson@wkw.com